UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ELIZEO VELAZQUEZ-HERNANDEZ,<br><br>Defendant. | Case No.: 19CR03066-KSC<br><br>**ORDER DENYING DEFENDANT'S MOTIONS TO (1) DISMISS THE INFORMATION; (2) PRESERVE AND PRODUCE COMPLETE DISCOVERY; (3) SUPPRESS STATEMENTS; AND GRANTING DEFENDANT'S MOTION TO: (4) LEAVE TO FILE FURTHER MOTIONS**<br>**[ECF NOS. 24 and 27]** |

On September 26, 2019, the Parties appeared before the Court regarding Defendant Elizeo Valazquez-Hernandez's Motions to (1) Dismiss the Information because: (A) § 1325 Violates the Non-Delegation Doctrine; (B) § 1325 is Unconstitutionally Vague; (C) Government Failed to Allege All Elements of § 1325; (D) Criminal Prosecution of Asylum Seekers Violates the Fifth Amendment, Statutory, and International Treaty Obligations; (E) Defendant's Prosecution Under § 1325 Violates the Equal Protection and Due Process Clauses; (F) § 1325's Definition of "Alien" Violates the Equal Protection and Due Process Clauses; (2) Preserve and Produce Complete Discovery; (3) Suppress Statements; and Granting Defendant's Motion for: (4) Leave to File Further Motions. ECF Nos. 24 and 27.

The Court took the Defendant's Motions under submission and now **DENIES** Motions Nos. 1-3 and **GRANTS** Motion No. 4 for the reasons set forth in the analysis below.

## PROCEDURAL BACKGROUND

On August 8, 2019, the Court arraigned Defendant on an Information charging him with a single misdemeanor count of violating 8 U.S.C. § 1325(a)(1). ECF Nos. 22-23. Defendant entered a not-guilty plea. ECF No. 23. On August 29, 2019 and September 11, 2019 Defendant filed the instant Motions. ECF Nos. 24 and 27. On September 12, 2019, September 13, 2019, and January 7, 2020 the Government filed its Responses and attached a Proposed Superseding Information also charging Defendant with a single misdemeanor count of violating 8 U.S.C. § 1325(a)(1). ECF Nos. 28 and 29. Defendant has not been arraigned on the Superseding Information.

## ANALYSIS

### I. DEFENDANT'S MOTION TO DISMISS THE INFORMATION

#### A. The Non-Delegation Doctrine

Defendant argues that 8 U.S.C. § 1325(a)(1) violates the non-delegation doctrine because it permits executive branch officials the discretion to determine what constitutes a crime under § 1325(a)(1). ECF No. 24 at 2-6. Defendant interprets the statute as allowing "immigration officers the ability to designate places for entry for purposes of immigration law." ECF No. 24 at 2. Defendant argues that this delegation is improper because Congress failed to provide any "intelligible principle" to guide and constrain that exercise of discretion. *See* ECF No. 24 at 8-9. In its Response, the Government argues that Defendant "reads the non-delegation doctrine far too broadly" and § 1325(a)(1) properly establishes "there should be Ports of Entry [and] properly allow[s] the Executive to determine where, when, and how these Ports operate." ECF No. 28 at 4.

Article 1, section 1 of the United States Constitution provides that "[a]ll legislative powers herein granted shall be vested in a Congress of the United States." "Accompanying that assignment of power to Congress is a bar on its further delegation." *Gundy v. United*

2

*States*, 139 S. Ct. 2116, 2123 (2019). Congress may not delegate "powers which are strictly and exclusively legislative." *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 42-43 (1825). "But the Constitution does not 'deny[ ] to the Congress the necessary resources of flexibility and practicality [that enable it] to perform its function[s].'" *Gundy*, 139 S. Ct. at 2123 (quoting *Yakus v. United States*, 321 U.S. 414, 425 (1944)). Congress may, however, "obtain the assistance of its coordinate Branches" and "may confer substantial discretion on executive agencies to implement and enforce the laws." *Id*. (citations omitted).

As the Supreme Court made clear, the standards to show a permissible delegation "are not demanding." *Id*. at 2129. Moreover, the Supreme Court has "almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law." *Id*. (quoting *Mistretta v. United States*, 488 U.S. 361, 416 (1989) (Scalia, J., dissenting)). Indeed, the Supreme Court has "[o]nly twice in this country's history (and that in a single year)" found a delegation excessive and "in each case only because 'Congress had failed to articulate *any* policy or standard' to confine discretion." *Id.* (citations omitted).

Here, Congress determined that there should be a proper location and procedure for an alien to seek admission to the United States. *See* 8 U.S.C. § 1225(a)(3) (requiring all applicants for admission to be inspected by immigration officers). Congress also established penalties for failing to follow those procedures. *See* 8 U.S.C. §§ 1321-1330. § 1325(a)(1) is one such provision. The details of where and when the ports of entry would be located was left to the executive agency responsible for staffing the facilities. Contrary to Defendant's contentions, the Court does not find that this delegation falls outside of constitutional bounds.

Defendant attempts to read into the statute a broader delegation than stated by arguing that any individual immigration official can designate any piece of land as a place for entry. ECF No. 24 at 3. This is incorrect. Congress requires that aliens seeking lawful entrance to the United States do so at a port of entry. *See United States v. Corrales-*

3

*Vasquez*, 931 F.3d 944, 946 (9th Cir. 2019); *United States v. Aldana*, 878 F.3d 877, 882 (9th Cir. 2017). Ports of entry can only be designated or de-designated by the Secretary of Homeland Security subject to the Administrative Procedures Act. *See* 8 C.F.R. § 100.4(a). Ports of entry also necessarily include facilities, staffed by immigration officials that are set up to accept applications for admission. *Aldana*, 878 F.3d at 882. Defendant's interpretation of § 1325(a)(1)—that it permits a border patrol agent to arbitrarily designate a section of the border fence as a port of entry—is in direct conflict with Congress's clear statutory scheme.

In support of his argument, Defendant cites the Supreme Court's decision in *Touby v. United States*, 500 U.S. 160, 169 (1991). At issue there was an amended statute that allowed the Attorney General to temporarily designate a particular drug as a Schedule I Controlled Substance thereby making the manufacture, possession, or distribution of that drug illegal. *Id.* at 163. The Supreme Court in *Touby* held that the delegation was permissible because Congress required the Attorney General to comply with several procedural steps before temporarily designating a new drug. *Id.* at 167. Defendant argues the delegation at issue in § 1325(a)(1) is similar, except Congress did not include direction "to the executive-branch official to guide and constraint the exercise of their discretion." ECF No. 24 at 6.

The Court disagrees, and finds that the issue in *Touby* is not analogous to § 1325(a)(1). In *Touby*, the Attorney General's authority to temporarily designate a drug as illegal was a discretionary act that expanded the scope of criminal conduct under the statute. Legislative direction was required. By contrast, the practical issues of where and when ports of entry are open does not expand the scope of conduct considered criminal under § 1325(a)(1). The type of conduct prohibited, i.e. illegal entry by an alien, remains the same. Setting the location of ports of entry and hours of operation only affects when and where an alien may lawfully comply with Congress's directives. It does not enlarge the scope of conduct that would subject an alien to criminal liability.

The Government cites *Gundy v. United States* to support its position that

§ 1325(a)(1) does not violate the non-delegation doctrine. ECF No. 28 at 7. In *Gundy*, the Court upheld a delegation for the Attorney General to determine when it would be feasible to require sex offenders convicted prior to the statute's enactment to register. *Gundy*, 139 S. Ct. at 2121. Congress determined that the registration requirements applied to pre-Act offenders, but left the practical problems of implementation and when pre-Act offenders would be required to register to the Attorney General. *See id.* at 2129-30.

The Court finds Congress's delegation under § 1325(a)(1) analogous to the delegation in *Gundy*. Congress determined that entering the United States outside a port of entry was prohibited. Further, Congress properly delegated the authority to implement § 1325(a)(1) to the Executive Branch, the agency that would be responsible for staffing and operating the ports of entry. The Court therefore concludes that § 1325(a)(1) does not violate the non-delegation doctrine.

For these reasons, the Court **DENIES** Defendant's Motion to Dismiss the Information on non-delegation grounds.

### B. § 1325 Is Not Impermissibly Vague

Defendant next argues that the Information must be dismissed because § 1325(a)(1) is impermissibly vague in violation of the Due Process Clause. *See* ECF No. 24 at 13-16. Specifically, Defendant contends § 1325(a)(1) runs afoul of the Constitution because it allows "an immigration officer . . . to decide what places and times to designate for entry . . . for any reason or no reason at all." ECF No. 24 at 14. Defendant argues § 1325(a)(1) at least permits arbitrary enforcement, thereby subjecting the statute to a facial attack. ECF No. 24 at 15-16.

A statute can be impermissibly vague for either of two independent reasons: (1) "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or (2) "if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

Defendant does not appear to seriously argue that § 1325(a)(1) fails to provide people of ordinary intelligence with a reasonable opportunity to understand what conduct

5

it prohibits.  Indeed, it is clear what § 1325(a)(1) prohibits:  § 1325(a)(1) makes it a "crime to enter the United States without submitting to examination or inspection" and "covers conduct occurring at any time or place other than 'a designated port of entry when it is open for inspection.'"  *Corrales-Vasquez*, 931 F.3d at 953.

Defendant argues that even if § 1325(a)(1) is not unconstitutionally vague as to him, it is still subject to facial attack because it encourages arbitrary enforcement.  ECF No. 24 at 15.  Specifically, Defendant alleges that any immigration officer can allegedly create or de-designate a border crossing point on a "whim."  ECF No. 24 at 10.

Defendant's argument is substantively the same as the argument the Court addressed above.  Interpreting § 1325(a)(1) to permit a border patrol agent to designate a border crossing point on a "whim" is in direct conflict with Congress's clear statutory scheme.  Formal procedures are in place to designate and de-designate ports of entry and Congress determined that a port of entry is the only place an alien may lawfully seek admission.  Moreover, it is well established that "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'"  *Hill*, 530 U.S. at 733 (quoting *United States v. Raines*, 362 U.S. 17, 23 (1960)).  Thus, the Court finds Defendant's hypothetical argument is insufficient to support a facial attack.

For these reasons, the Court **DENIES** Defendant's Motion to Dismiss the Information on vagueness grounds.

### C. § 1325(a)(1) is Sufficiently Charged

Defendant argues the Information must be dismissed because it fails to allege the elements of § 1325(a)(1).[1]  ECF No. 25 at 1-8.  Specifically, Defendant argues the

_____

[1] The Government, in its response, indicated it was prepared to file a Superseding Information at the motion hearing that would "specify[ ] that the 'attempt' element includes the allegation that Defendant 'attempted to enter the United States of America with the purpose, i.e., conscious desire to enter the United States at a non-designated time and place" thereby curing the first flaw claimed by Defendant. ECF No. 28 at 10.  However, the Government has not filed, nor was Defendant arraigned on a Superseding Information. ECF 30.  As such, the Court proceeds with its analysis under the Information.

6

Information is deficient because it "fails to contain the implied *mens rea* for the attempt portion of § 1325(a)(1)." ECF No. 25 at 2. Defendant identifies two elements the Government failed to charge: (1) that Defendant attempted to enter the United States with the purpose, i.e., conscious desire to enter the United States at a non-designated time and place; and (2) that Defendant knew he was an "alien" when he attempted to enter the United States. ECF No. 25 at 2.

### 1. Intent

A charging document must include the "essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). A charging document "that tracks the words of the statute violated is generally sufficient" to allege the elements of an offense, but "implied necessary elements, not present in the statutory language" must be included. *United States v. Jackson*, 72 F.3d 1370, 1380 (9th Cir. 1995) (citations omitted).

The Defendant cites the Ninth Circuit's decision in *United States v. Pernillo-Fuentes*, 252 F.3d 1030 (9th Cir. 2001) in support of his argument. However, the *Pernillo-Fuentes* decision is superseded by the Supreme Court's decision in *United States v. Resendiz-Ponce*, 549 U.S. 102 (2007). In *Resendiz-Ponce*, the defendant challenged his charge of "attempted" reentry into the United States under § 1326(a). *Id*. at 104. The Supreme Court began by reiterating the two constitutional requirements for an indictment: (1) that it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend"; and (2) that it "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Id*. (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974). The Supreme Court held the use of the word "attempt" in defendant's charging document satisfied both "the overt act and intent elements" and provided adequate notice. *Id.* at 107. Similarly here, the Information's use of "attempt" encompasses the intent element Defendant alleges is missing.

As the Government notes in decisions following *Resendiz-Ponce* (albeit

---

filed on August 8, 2019. ECF Nos. 22-23.

unpublished), the Ninth Circuit also found the use of the word "attempt" or the phrase "attempt to" in a charging document adequately puts a Defendant on notice of the intent component of a charged offense. *See United States v. Devore*, 771 F. App'x 427, 428 (9th Cir. 2019) (defendant charged with attempted production of child pornography); *United States v. Elk-Booth*, 481 F. App'x 326, 326-27 (9th Cir. 2012) (defendant charged with attempted aggravated sexual abuse).

For these reasons, the Court **DENIES** Defendant's Motion to Dismiss the Information on the grounds that it fails to allege the specific intent element of the charged offense.

### 2. Knowledge

The Court next addresses Defendant's argument that the Information is deficient "because it fails to allege that [Defendant] knew he was an 'alien' when he committed the charged offense." *See* ECF No. 25 at 5-8. Defendant cites to the Supreme Court's recent decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019) as support. ECF No. 25 at 6-8. The Government argues *Rehaif* does not apply to § 1325 prosecutions like this case. ECF No. 28 at 11-12. The Court agrees that the rationale in *Rehaif* is not directly applicable to the prosecution in this case.

The *Rehaif* case involved a prosecution under 18 U.S.C. § 922(g), which bars certain persons, including aliens who are "illegally or unlawfully in the United States," from possessing firearms. *Rehaif*, 139 S. Ct. at 2194. A separate provision of Title 18 provides that anyone who "knowingly violates" § 922(g) is subject to fine or imprisonment for up to ten years. *Id*. The Supreme Court held that in a prosecution under §§ 922(g) and 924(a)(2), the Government must show that the defendant: (1) "knew he possessed a firearm"; and (2) "knew he [was an alien unlawfully in the United States] at the time he possessed it." *Id*. The Court finds *Rehaif* distinguishable to this case in at least two ways.

First, the statute at issue in *Rehaif*—18 U.S.C. § 924(a)(2)—expressly provided that anyone who "knowingly violates" 18 U.S.C. § 922(g) be fined or imprisoned for up to ten years. The question in *Rehaif* therefore concerned "the scope of the word 'knowingly,'"

8

with the Supreme Court holding "knowingly" applied to "both defendant's conduct and status." *Id*. In contrast, here, Congress did not incorporate a "knowingly" requirement into the text of § 1325(a)(1).

Second, the *Rehaif* Court was careful to distinguish between those offenses where the defendant's status was the "crucial element" separating innocent from wrongful conduct with other statutes and other offenses such as "misappropriating classified information, seeking to evade detection for certain federal crimes, and facilitating child pornography" which "would be wrongful irrespective of the defendant's status." *Id*. at 2197.

In addressing this point, Defendant argues "[a] U.S. citizen who just enters or attempts to enter the United States at a non-designated time or place has committed no offense." ECF No. 25 at 7. Defendant cites to 19 U.S.C. § 1459 in support of this argument. Therefore, Defendant argues that it is a defendant's status (and not his conduct) that makes the difference between criminal and non-criminal conduct under § 1325(a)(1). *Id*. The Court disagrees in part with Defendant's analysis of § 1459. Unlike in *Rehaif*, the Court finds Defendant's conduct would be unlawful regardless of his status as an alien. In relevant part, § 1459(a) provides that:

> (a) Individuals . . . arriving in the United States other than by vessel, vehicle, or aircraft **shall**— (1) enter the United States only at a border crossing point designated by the Secretary; **and** (2) immediately— (A) report the arrival, and (B) present themselves . . . for inspection.

(emphasis added). A plain reading of the text makes clear that the provision requires all individuals to: (1) enter the United States at a designated location; and (2) immediately report their arrival. Both are required. Contrary to Defendant's analysis, a U.S. Citizen who enters the United States at a non-designated location has violated this statute regardless of whether or not they report the arrival. Defendant's status was therefore not the "crucial element" separating wrongful from innocent conduct.

For these reasons, the Court **DENIES** Defendant's Motion to Dismiss the

9

Information for failure to allege Defendant had knowledge he was an alien when he was apprehended.

## D. Defendant's Asylum Rights Were Not Violated Under the Fifth Amendment, Statutory, And International Treaty Obligations

Defendant argues the Court should dismiss this case because he is as an "asylum seeker," and the Government's criminal prosecution of asylum seekers violates: (1) the due process clause of the Fifth Amendment; (2) the statutory right to apply for asylum; and (3) international treaty obligations. *See* ECF No. 25 at 8-13. The Court rejects these arguments for the reasons stated below.

To begin, Defendant's due process claim belies his own assertion that he "retained immigration counsel and filed an application for asylum based on his fear of return." ECF No. 25 at 8. Defendant was apparently able to exercise his procedural due process right to seek political asylum, despite this prosecution. Moreover, as the Government correctly points out, Defendant is "out of custody on bond." ECF No. 36 at 3. Therefore, Defendant's hypothetical argument that "[p]rosecution can deprive an asylum seeker from the meaningful opportunity to be heard" similarly fails, as it is inapplicable to his case. ECF No. 25 at 10. Defendant has not demonstrated how his prosecution has hindered his ability to attend hearings in support of his asylum petition. The Court therefore concludes Defendant was not deprived of due process under the Fifth Amendment.

Next, Defendant argues that the prosecution violates his statutory right to apply for asylum. ECF No. 25 at 9. Defendant cites 8 U.S.C. § 1158(a)(1), which provides: "[a]ny alien who is physically present in the United States . . . [ ] whether or not at a designated port of arrival . . . [ ] irrespective of such alien's status, may apply for asylum in accordance with this section or, where applicable, section 1225(b) of this title." Defendant urges the Court to consider § 1225(b) requires an immigration officer to refer an alien for an asylum interview if he or she expresses "an intention to apply for asylum . . . or a fear of persecution," even if the officer determines the alien is otherwise inadmissible. ECF No. 25 at 9. In doing so, Defendant again manufactures hypothetical scenarios of how an

10

individual can be deprived of this purported right to apply for asylum. *See* ECF No. 25 at 10. However, as noted above, Defendant "filed an application for asylum based on his fear of return." ECF No. 25 at 8. Defendant's prosecution has not precluded him from exercising his right to apply for asylum. The Court concludes that any statutory right to apply for asylum has not been violated.

Defendant argues that his prosecution violates his rights under Article 31(1) of the United Nations Convention Relating to the Status of Refugees ("Convention"). ECF No. 25 at 10. Although the United States did not sign the Convention, it acceded to the 1967 Protocol Relating to the Status of Refugees ("Protocol"). *See Khan v. Holder*, 584 F.3d 773, 783 (9th Cir. 2009). "The Protocol bound parties to comply with the substantive provisions of Articles 2 through 34 of the United Nations Convention Relating to the Status of Refugees." *I.N.S. v. Stevic*, 467 U.S. 407, 416 (1984) (internal citations omitted). Article 31(1) of the Protocol provides:

> The contracting States shall not impose penalties, on account of their illegal entry or presence, on refugees, who, coming directly from a territory where their life or freedom was threatened in the sense of Article 1, enter or are present in their territory without authorization, provided they present themselves without delay to the authorities and show good cause for their illegal entry or presence.

Defendant's reliance on Article 31(1) to challenge his prosecution is misplaced. *See e.g.*, *United States v. Velasquez-Luna*, No. 18MJ11463-WQH, 2019 WL 338947, at *2 (S.D. Cal. Jan. 28, 2019) ("Defendant cannot rely on Article 31(1) of the Protocol to challenge his prosecution."). The Protocol is not a self-executing treaty and is therefore not domestically enforceable. *Khan*, 584 F.3d at 783; *see also United States v. Malenge*, 294 F. App'x 642, 644 (2d. Cir. 2008) (holding the Protocol "did not provide [asylum seeker] with any judicially enforceable rights" therefore her criminal prosecution for entering the United States using false documentation did not violate the Protocol). Because Defendant has no domestically enforceable rights under the Protocol, this argument fails. *See Velasquez-Luna*, 2019 WL 338947, at *2; *United States v. Guevara-Medina*, No.

11

18MJ9443-BTM, 2018 WL 3970092, at *1 (S.D. Cal. Aug. 29, 2018); *United States v. Munoz*, No. CR-17-1078, 2017 WL 4922047, at *3 (D. Ariz. Oct. 30, 2017) (holding "[d]efendant acquired no rights under the 1967 Protocol, including its incorporation of Article 31(1) . . . . Defendant accordingly cannot rely on these international agreements as a basis for dismissing the indictment.").

The Court notes that even if the Protocol were enforceable, Defendant has not set forth facts that he abided by the Protocol's provisions. Defendant only asserts he "presented himself without delay to the authorities and sought asylum." ECF No. 25 at 12. Under Article 31(1) of the Protocol, "contracting states are free to prosecute when refugees . . . fail to immediately notify authorities that they are seeking asylum and explain their illicit entry." *See United States v. Malenge*, 472 F. Supp. 2d 269, 273 (N.D.N.Y. 2007), *aff'd*, 294 F. App'x 642 (2d Cir. 2008); *Guevara-Medina*, 2018 WL 3970092, at *2 ("Because Defendant hid in a bush after entry in an attempt to evade authorities, and did not intend to apply for asylum unless he was caught, he has not shown that the protections of Article 31(1) of the Protocol apply to him."); *Munoz*, 2017 WL 4922047, at *4 ("Article 31(1) protects asylum seekers who 'present themselves without delay to the authorities and show good cause for their illegal entry or presence.' Defendant did not do this. He did not appear at a U.S. port of entry and ask for asylum."). Here, the Court does not doubt Defendant has sought asylum. But based on the facts before the Court, Defendant did not notify authorities he was seeking asylum at the time he entered into the United States. *See* ECF No. 27-2 at 112. The Court concludes international treaties do not bar Defendant's prosecution under 8 U.S.C. § 1325(a)(1).

For the reasons stated above, Defendant's Motion to Dismiss the Information because the prosecution violates the Fifth Amendment's Due Process Clause, statutory rights, and international treaty obligations is **DENIED**.

### E. Defendant's Prosecution Does Not Violate Equal Protection or Due Process

#### 1. Defendant's Equal Protection Claim

Defendant argues his rights to equal protection are violated because criminal

12

defendants charged with 8 U.S.C. § 1325(a)(1) are not prosecuted through the Central Violations Bureau ("CVB") Court "even though § 1325(a)(1) defendants are charged with a similar or less serious offenses" than other individuals prosecuted through CVB Court and "pose less risk of flight." ECF No. 27-1 at 4. Thus, Defendant argues, he and "other defendants charged with § 1325 are, by definition, set apart on the basis of their alienage, as well as by their national origin and race." ECF No. 21-1 at 5.

In its Response, the Government argues that the CVB Court does "not distinguish based on the basis of alienage, national origin, or race" and § 1325(a)(1) defendants are prosecuted "'based on the charges, not the alienage of defendants.'" ECF No. 29 at 3. The Government argues "[e]ven if § 1325(a)(1) were treated as making an alienage-based distinction" the CVB docket "passes 'rational basis' review." *Id*. The Court agrees.

In *United States v. Mendoza-Hinojosa*, No. 00-50327, 2000 U.S. App. LEXIS 8068, at *7 (9th Cir. Apr. 20, 2000), the Ninth Circuit held:

> [T]here is a distinction between statutes which classify based on alienage and statutes which classify based on criminal actions. Given Congress' plenary power over immigration, imposing different rules on immigrants versus citizens does not in itself create a suspect classification.

*See also Plyer v. Doe*, 457 U.S. 202, 223, 225 (1982) ("Undocumented aliens cannot be treated as suspect class because their presence in this country in violation of federal law is not a 'constitutional irrelevancy.' . . . [I]t is 'a routine and normally legitimate part' of the business of the Federal Government to classify on the basis of alien status[.]").

Here, 8 U.S.C. § 1325(a)(1) prohibits "[a]ny alien" from "enter[ing] or attempt[ing] to enter the United States at any time or place other than as designated by immigration officers." 8 U.S.C. § 1325(a)(1) therefore creates a classification based upon specific criminal action—"enter[ing] or attempt[ing] to enter the United States at any time or place than as designated by immigration officers"—and does not create a suspect classification.

"Non-suspect classifications are 'constitutionally valid if there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently

13

based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational.'" *Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1060 (9th Cir. 2018) (quoting *Armour v. City of Indianapolis*, 566 US. 673, 681 (2012)). "Further, because the classification is presumed constitutional, the burden is on the [party] attacking the legislative arrangement to negate every conceivable basis which might support it." *Id*. at 1060-61 (quoting *Armour*, 556 U.S. at 681).

In this case, Defendant has failed to negate every conceivable basis to support prosecuting him in the District Court rather than CVB Court. The CVB Court is responsible for "processing violation notices (tickets/citations) issued and payments received for petty offense charged on a federal violation notice." *See http://www2.casd.uscourts.gov/cvb/*. These include violations of certain federal laws as well as certain state laws, if the state law violations occur on tribal lands or on federal property such as federal buildings, national parks, military installations, post offices, Veteran Affairs offices, Veterans Affairs medical centers, national wildlife refuges, and national forest." *Id*. Violations include "improper parking, illegal camping, speeding, civil disturbances, fish and wildlife infractions, and other offenses." *Id*.

There is nothing in the record showing that Defendant's offense occurred on federal property. As Courts in this District have held, "the argument that misdemeanors are misdemeanors is not the point." *See United States v. Chavez-Diaz*, No. 18MJ20098-AJB, 2018 U.S. Dist. LEXIS 224901, at *11 (S.D. Cal. Oct. 30, 2018). Instead, "[t]he jurisdictional underpinnings of the basis for the charges, the manner of 'arrest' and prosecutorial discretion are all factors." *Id*.; *see also United States v. Mouret-Romero*, No. 18MJ228929-WQH, 2019 U.S. Dist. LEXIS 40774, at *4 (S.D. Cal. Mar. 13, 2019) ("Cases prosecuted in the CVB court are predicated on a violation of law on federal property and § 1325 prosecutions do not have this same jurisdictional underpinning.")

For these reasons, the Court **DENIES** Defendant's Motion to Dismiss on equal protection grounds.

14

### 2. Defendant's Claim of Selective Prosecution and Selective Enforcement

Defendant alternatively requests that the Court adjudicate his challenge under the legal framework of a selective prosecution or selective enforcement claim. ECF No. 27-1 at 8-11.

"The two elements of a selective prosecution claim are that others similarly situated have not been prosecuted and that the allegedly discriminatory prosecution of the defendant was based on an impermissible motive." *United States v. Culliton*, 328 F.3d 1074, 1081 (9th Cir. 2003) (quotations omitted). In order to state an equal protection claim based on the alleged selective enforcement of a law, Defendant must show that "the law is applied in a discriminatory manner or imposes different burdens on different classes of people." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995).

Here, Defendant has not addressed how individuals charged with § 1325 can be accurately described as a "similarly situated" class. Further, Defendant has not shown he was treated differently based upon any impermissible motive.

As the Courts in this District have already held:

> [T]he calendaring of Defendant's case with other similarly charged was based on the charges and not the alienage. Assessing the Court's needs to administer its business with available resources, it is both rational and prudent to handle matters efficiently by the type of matter. The "processing" of [D]efendant's case by charge is not discriminatory, and [D]efendant has not proven otherwise.

*Chavez-Diaz*, 2018 U.S. Dist. LEXIS 224901, at *11.

For these reasons, the Court **DENIES** Defendant's Motion to Dismiss under an equal protection claim based on a selective prosecution/selective enforcement framework.

### 3. Defendant's Due Process Claims

Defendant argues the Government's failure to prosecute him in CVB Court violates his substantive and procedural due process rights. ECF No. 27-1 at 11-12. Specifically, Defendant argues that his substantive due process rights are violated because it "'shocks the conscience' for the Government to blatantly deprive § 1325 defendants of the

19CR03066-KSC

substantial benefits of CVB court while extending those benefits to defendants charged with similar or *more* serious crimes who have a similar or *greater* risk of flight." ECF No. 27-1 at 11. The Government argues that Defendant's claim fails to clear the "high hurdle" to show that it "shocks the conscience." ECF No. 29 at 6. The Court agrees.

"'[S]ubstantive due process' prevents the government from engaging in conduct that 'shocks the conscience' or interferes with rights 'implicit in the concept of ordered liberty[.]'" *United States v. Salerno*, 481 U.S. 739, 746 (1987) (citations omitted). Thus, in order to establish a violation of substantive due process, a claimant must show that "the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *City of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). "[This] 'shock the conscience' standard erects a high hurdle for would-be claimants." *Ms. L. v. U.S. Immigration & Customs Enf't*, 302 F. Supp. 3d 1149, 1166 (S.D. Cal. 2018) (quoting *Aguilar v. U.S. Immigration & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 21 (1st Cir. 2007)).

The Court finds that a prosecution for violation of 8 U.S.C. § 1325(a)(1) in the District Court rather than in the CVB Court falls well short of "shocking the contemporary conscience." As the Government notes, Defendant appeared within hours before a U.S. Magistrate Judge, was appointed counsel, and had all other rights afforded. *See* ECF No. 29 at 6. For instance, Defendant was allowed to plead to the offense, satisfied the conditions of bond, and was released. ECF Nos. 5, 8, 9. Defendant is exercising his right to proceed to trial. Consequently, Defendant's substantive due process claim fails.

Defendant separately argues his procedural due process rights have been violated because: (1) "the interest at stake for [defendants] is substantial . . . [they] face a significant loss of liberty [and] greater chance of being convicted"; (2) "charging § 1325 defendants in CVB Court would almost entirely alleviate the risk that they would be . . . subject to horrendous conditions [in custody];" and (3) "the costs and administrative burden on the Government are minimal." ECF No. 27-1 at 11-12.

"A procedural due process claim has two elements." *Franceschi v. Yee*, 887 F.3d

927, 935 (9th Cir. 2018). The claimant must demonstrate: (1) "a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Id*. (quotations omitted). Here, Defendant fails to explain how *he* was denied adequate procedural protections. Defendant's proceedings were conducted in accordance with the Federal Rules of Criminal Procedure, and Defendant does not contend that any aspect of his criminal proceedings violated these rules. As a result, Defendant's generalized prosecutorial due process claim fails.

For these reasons, the Court **DENIES** Defendant's Motion to Dismiss on substantive and procedural due process grounds.

### F. § 1325's Definition of "Alien" Does not Violate Equal Protection or Due Process

Defendant moves to dismiss the Information on the basis that 8 U.S.C. § 1325 "employs an unconstitutional definition of the term 'alien.'" ECF No. 27-1 at 12. Specifically, Defendant argues that 8 U.S.C. § 1325 is unconstitutional because it "favors unwed mothers over unwed fathers." ECF No. 27-1 at 12-13.

In support, Defendant cites to the Supreme Court's decision in *Sessions v. Morales-Santana*, 137 S. Ct. 1678 (2017). In *Morales-Santana*, the Supreme Court addressed the constitutionality of certain provisions of the Immigration and National Act ("INA") governing the acquisition of U.S. Citizenship by a child born abroad to unwed U.S. citizens. *Id*. The Supreme Court held that these provisions—which applied differently based on the parent's gender—violated the equal protection principle implicit in the Fifth Amendment's Due Process Clause. *Id*.

Here, Defendant has not shown how the Supreme Court's narrow holding in *Morales-Santana* is applicable to his case. As the Government notes, the Supreme Court did not "address other provisions of the INA, such as 8 U.S.C. § 1325." ECF No. 29 at 7. Defendant does not claim he is entitled to derivative citizenship. Further, there is no evidence on the record indicating either of Defendant's parents is a U.S. citizen.

Furthermore, Defendant concedes his argument has already been rejected by the

17

Ninth Circuit in an unpublished decision. *See United States v. Madero-Diaz*, 752 F. App'x 537, 2019 WL 625678 (9th Cir. Feb. 14, 2019). Defendant's argument similarly fails here.

For these reasons, the Court **DENIES** Defendant's Motion to Dismiss the Information on equal protection and due process grounds.

## II. DEFENDANT'S MOTION TO PRESERVE EVIDENCE AND COMPEL DISCOVERY

Defendant requests that the Court "order the government to preserve and produce all discovery to which [Defendant] is owed under Rule 16 and the Constitution." ECF No. 27-1 at 13-16.

It is well established that the Government has a self-executing obligation to turn over *Brady/Henthorn* qualifying information. Here, the Government has stated that it "understands its obligations" under *Brady*, Rule 16, the Jencks Act, and the "notice requirements of FRE 404(b)." ECF No. 29 at 8. The Government indicates it has addressed four of Defendant's discovery requests and will promptly notify Defendant if and when discovery becomes available. ECF No. 29 at 8-9.

Defendant's fifth request was addressed by the Court during the Motions hearing on September 26, 2019. See ECF No. 30. There, the Court ordered the Government to provide *Henthorn* discovery no later than one (1) week prior to the trial date. It is unnecessary for the Court to issue an order requiring further compliance.

For these reasons, Defendant's Motion to Preserve Evidence and Compel Discovery is **DENIED AS MOOT**.

## III. DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

### A. Defendant's Statements Taken at Border Patrol Station

Defendant moves to suppress "all statements obtained from [Defendant by agents] at the Border Patrol Station." ECF No. 27-1 at 16. Specifically, Defendant argues the statements obtained at the Border Patrol Station after Defendant "plainly invoked his rights under *Miranda* . . . cannot be used by the government at trial." ECF No. 27-1 at 16. The Government, in its Response, indicates Defendant "did not make a post-arrest statement

and . . . does not intend to introduce any 'routine booking' statements." ECF No. 29 at 9.

Since the Government does not intend to introduce any statements Defendant made after his arrest, Defendant's Motion to Suppress post-arrest statements from the Government's case-in-chief is **DENIED AS MOOT**.

## B. Defendant's Statements in the Field

Defendant separately moves to suppress statements obtained by the arresting agent in the field at the time of arrest. ECF No. 27-1 at 17-18. Defendant argues his "field statements [were] made while in custody, in response to interrogation" and "there is no evidence [Defendant] was *Mirandized* in the field." *See* ECF No. 27-1 at 17-18. The Government responds that Defendant's "motion should be denied because long-standing legal precedent holds that such field statements are admissible." ECF No. 29 at 9.

Field questioning of a person near the border is a non-custodial *Terry* stop that does not trigger *Miranda*. *United States v. Galindo-Gallegos*, 244 F. 3d 728, 732 (9th Cir. 2001). The Ninth Circuit has held that an officer "may question individuals reasonably detained near the border about their citizenship and immigration status." *United States v. Cervantes-Flores*, 421 F.3d 825, 830 (9th Cir. 2005).

Defendant concedes "Border Patrol Agents may briefly detain a person to determine whether they are lawfully in the country," citing the Ninth Circuit's *Galindo-Gallegos* decision. ECF No. 27-1 at 17. Yet Defendant urges the Court to distinguish his detention from the individuals detained in *Galindo-Gallegos*, because Defendant was apprehended alone "in a "remote area" by a "presumably uniformed" agent, who commanded Defendant "not to move." ECF No. 27-1 at 18. The Court is not persuaded. The individuals in *Galindo-Gallegos* were also apprehended in a remote area, handcuffed, and told by agents they could not leave. 244 F. 3d at 730.

As stated by the Ninth Circuit, "[t]he case books are full of scenarios in which a person is detained by law enforcement officers, is not free to go, but is not 'in custody' for *Miranda* purposes." *United States v. Butler*, 249 F.3d 1094, 1098 (9th Cir. 2001); *see e.g.*, *United States v. Medina-Villa*, 567 F.3d 507, 520 (9th Cir. 2009) (finding defendant was

not in custody even though border patrol agent prevented defendant from leaving by blocking his car and then approached the car with gun drawn); *Cervantes-Flores*, 421 F.3d at 830 (handcuffing of defendant did not convert *Terry* stop into a custodial arrest). Here, Defendant was briefly detained, without handcuffs on, while the agent ascertained whether Defendant was in the country lawfully or not. *See* ECF 27-2 at 112. Consequently, the Court finds Defendant was not in custody for *Miranda* purposes.

For the reasons stated above, the Court **DENIES** Defendant's Motion to Suppress his field statements from the Government's case-in-chief.

## IV.  DEFENDANT'S MOTION TO LEAVE TO FILE FURTHER MOTIONS

Defendant requests that the Court "grant leave for [Defendant] to file further motions" due to ongoing discovery production and Defendant's investigation into this matter.   ECF No. 27-1 at 19.  The Government does not oppose this motion "so long as any motions are timely filed, based on newly discovered evidence, and permit both the Court and Government counsel reasonable time to respond and review."  ECF No. 29 at 10. As there is no objection on the record, the Court **GRANTS** Defendant's motion for leave as long as any new motions are based on newly discovered evidence.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motions to (1) Dismiss the Information because: (A) § 1325 Violates the Non-Delegation Doctrine; (B) § 1325 is Unconstitutionally Vague; (C) Government Failed to Allege All Elements of § 1325; (D) Criminal Prosecution of Asylum Seekers Violates the Fifth Amendment, Statutory, and International Treaty Obligations; (E) Defendant's Prosecution Under § 1325 Violates the Equal Protection and Due Process Clauses; (F) § 1325's Definition of "Alien" Violates the Equal Protection and Due Process Clauses; (2) Preserve and Produce Complete Discovery;

/ / /

/ / /

/ / /

20

(3) Suppress Statements; and **GRANTS** Defendant's Motion for: (4) Leave to File Further Motions.

      **IT IS SO ORDERED.**

Dated:  January 28, 2020

                              Hon. Karen S. Crawford
                              United States Magistrate Judge

19CR03066-KSC